## MIECZYSLAW WISNIEWSKI ET AL. *v.* TOWN OF DARIEN ET AL.
### (AC 31812)

Lavine, Bear and Mihalakos, Js.

Argued November 15, 2011—officially released May 8, 2012

*Thomas R. Gerarde,* with whom, on the brief, was *Beatrice S. Jordan,* for the appellants (named defendant et al.).

*Alinor C. Sterling,* with whom were *J. Craig Smith* and, on the brief, *William M. Bloss,* for the appellees (plaintiffs).

*Opinion*

BEAR, J. The defendants, the town of Darien (town) and Michael Cotta, appeal from the judgment of the trial court rendered in favor of the plaintiffs, Mieczyslaw Wisniewski and Jolanta Wisniewski, after a jury trial in this personal injury action.[1] On appeal, the defendants claim that the court (1) improperly refused to direct the verdicts in their favor as a matter of law and (2) improperly refused to set aside the jury's verdicts and to render judgment in their favor based on controlling authority and the great weight of the evidence.[2] We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. On July 11, 2006, the plaintiffs were injured when a tree within the town's right-of-way toppled onto their vehicle in front of 35 Rings End Road, a residential property in the town of Darien (the property).[3]

Prior to the plaintiffs' accident, the town had been notified on several occasions in 2002 and 2003 by Kristin

---

[1] Jonathan Peter and Nancy Peter were also named as defendants in the plaintiff's complaint; however, because the plaintiffs withdrew the action against them, they are not parties to this appeal. We therefore refer to the town and Cotta as the defendants.

[2] The defendants also claim that none of the exceptions to governmental immunity for discretionary acts apply and that General Statutes § 52-557n (b) (8) is inapplicable to the present matter. Because we find no error in the court's denial of the motions to direct and to set aside the jury verdicts, we need not reach these additional claims.

[3] The parties stipulated that the tree that fell on the plaintiffs' vehicle "was, before it fell, in whole or in part within the right-of-way, also known as the limit, of Rings End Road, a public road of the [t]own of Darien, so that under [General Statutes] §§ 23-59 and 23-65 (b), the [t]own of Darien tree warden had care and control of that tree."

Doble, an owner of the property, about the deteriorated condition of some of the trees located along the roadway. According to records maintained by the town's department of public works, Doble contacted the town on June 18, 2002, stating that her arborist had determined that five trees located near the roadway "need attention." On October 8, 2002, Doble again contacted the town, noting that a number of limbs had fallen from trees located near the roadway. On October 19, 2002,[4] Doble requested that the town send someone to examine a "[h]ollow" tree located near her front gate, next to the roadway, that had lost a "leader."[5]

At both the time of Doble's complaints and the time of the plaintiffs' accident, Cotta was the town's tree warden. Pursuant to statute, Cotta was responsible for the care and maintenance of trees located along certain public rights-of-way within the town's geographic limits. See General Statutes § 23-59. There were no express town charter provisions, rules or ordinances directing Cotta's duties as tree warden.

In 2006, the plaintiffs commenced this personal injury action against the defendants in the Superior Court. The original complaint contained claims of negligence and loss of consortium against Cotta, and sought indemnification against the town pursuant to General Statutes

[4] In addition, on March 14, 2003, a hollow tree on the property was posted for removal by Cotta after a report from the Connecticut Light and Power Company, and, on or about April 10, 2003, it was cut down by a tree removal contractor. On March 22, 2004, the remaining tree stump was removed from the property. No further actions with regard to the property were recorded in the town's records prior to the plaintiffs' accident.

[5] A leader is defined as "a primary or terminal shoot of a plant (as a main branch of an apple tree or the terminal shoot of a spruce tree) . . . the upper portion of the primary axis of a tree esp. when extending beyond the rest of the head and forming the apex . . . ." Webster's Third New International Dictionary (2002) p. 1283. The record contains no evidence indicating that the tree that fell on the plaintiffs' vehicle had lost a leader.

§§ 7-465 and 7-101a. In addition, the complaint contained claims for liability pursuant to General Statutes §§ 52-557n and 13a-149 against the town.

The defendants moved to strike all counts in the complaint on the ground that the plaintiffs' action was barred by application of the doctrine of governmental immunity. That motion was denied. The defendants then filed an answer and special defenses, including the special defense of governmental immunity. Thereafter, the defendants moved for summary judgment, arguing, in part, that governmental immunity barred the plaintiffs' claims. The court denied the defendants' motion for summary judgment, and the case proceeded to a jury trial.

After the close of the plaintiffs' case-in-chief, the defendants moved for directed verdicts.[6] Again, the defendants argued that the plaintiffs' action was barred by the doctrine of governmental immunity. The court reserved judgment on that motion, and the case proceeded to deliberation, after which the jury returned verdicts for the plaintiffs. In response to interrogatories, the jury found that the plaintiffs had established the negligence of the defendants under § 52-557n by a preponderance of the evidence and that such negligence was the proximate cause of the plaintiffs' injuries.[7] The

---

[6] At the conclusion of their evidence, the plaintiffs moved to amend their complaint to conform to the evidence. The defendants objected. The court granted the plaintiffs' motion. In their amended complaint, the plaintiffs omitted counts alleging violations of § 13a-149. That amended complaint is the operative complaint in the present matter.

[7] Specifically, with regard to governmental immunity, the interrogatories provided, and the jury found, as follows: "1. Did the defendants establish by a preponderance of the evidence that their duty to maintain the tree that fell on the plaintiffs' vehicle was a public duty, as defined by the Judge.
"YES X NO __

* * *

"2. Did the defendants establish by a preponderance of the evidence that their duty to inspect, maintain and remove the tree that fell on the plaintiffs' vehicle was a discretionary act as defined by the Judge.
"YES __ NO X"

jury further found that, although the defendants had established by a preponderance of the evidence that their duty to maintain the subject tree was public in nature, the defendants failed to establish that their duty to inspect, maintain and remove the tree was discretionary.[8] Jolanta Wisniewski was awarded $200,000, and Mieczyslaw Wisniewski was awarded $1.5 million in damages.

Thereafter, the defendants filed a motion to set aside the verdicts, and the court denied both the previously filed motion for directed verdicts and the motion to set aside the verdicts. This appeal followed.

On appeal, the defendants claim that the court erred in failing to direct or to set aside the verdicts on the ground that they are entitled to governmental immunity. Specifically, the defendants argue that the jury verdicts are contrary to law and against the great weight of the evidence. The defendants do not raise claims attacking the jury's findings with regard to proof of negligence or causation, nor do they claim error with regard to the court's jury instructions.

"Our well settled standard of review for a motion to direct a verdict is the same as that employed for a motion to set aside a verdict. . . . Our review of the trial court's refusal to [grant the motions] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony." (Citation omitted; internal quotation marks omitted.) *Mips* v. *Becon, Inc.*, 70 Conn. App. 556, 558–59, 799 A.2d 1093 (2002). "Reversal is required only where an abuse of discretion is manifest or where injustice

---

[8] On appeal, neither party challenges the jury's finding that Cotta's duties were public in nature, nor do the defendants contest the propriety of the interrogatories.

appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 91 Conn. App. 26, 37, 879 A.2d 526 (2005), aff'd, 285 Conn. 674, 940 A.2d 800 (2008).

I

The defendants first claim that the court erred in failing to direct or to set aside the verdicts based on controlling authority establishing that all of Cotta's duties as tree warden, including the duty to inspect, are discretionary. The defendants argue that the prevailing law establishes that the duties of a tree warden are discretionary as a matter of law, and they cite § 23-59[9]

---

[9] General Statutes § 23-59 provides: "The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough, except those along state highways under the control of the Commissioner of Transportation and except those in public parks or grounds which are under the jurisdiction of park commissioners, and of these the tree warden shall take the care and control if so requested in writing by the park commissioners. Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road or grounds. The tree warden shall expend all funds appropriated for the setting out, care and maintenance of such trees and shrubs. The tree warden shall enforce all provisions of law for the preservation of such trees and shrubs and of roadside beauty. The tree warden shall remove or cause to be removed all illegally erected signs or advertisements, placed upon poles, trees or other objects within any public road or place under the tree warden's jurisdiction. The tree warden may prescribe such regulations for the care and preservation of such trees and shrubs as the tree warden deems expedient and may provide therein for a reasonable fine for the violation of such regulations; and such regulations, when approved by the selectmen or borough warden and posted on a public signpost in the town or borough, if any, or at some other exterior place near the office of the town or borough clerk, shall have the force and effect of town or borough ordinances. Whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under the tree warden's control, the tree warden may cause such tree or shrub to be removed or pruned at the expense of the town or borough and the selectmen or borough warden shall order paid to the person performing such work such reasonable compensation therefor as may be determined

and this court's decision in *DeConti* v. *McGlone*, 88 Conn. App. 270, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005), in support of their position.

As a general rule, "a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." *Williams* v. *New Haven*, 243 Conn. 763, 767, 707 A.2d 1251 (1998). "General Statutes § 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. General Statutes § 52-557n (a) (1) (A). General Statutes § 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . .

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part

and approved in writing by the tree warden. Unless the condition of such tree or shrub constitutes an immediate public hazard, the tree warden shall, at least ten days before such removal or pruning, post thereon a suitable notice stating the tree warden's intention to remove or prune such tree or shrub. If any person, firm or corporation objects to such removal or pruning, such person, firm or corporation may appeal to the tree warden in writing, who shall hold a public hearing at some suitable time and place after giving reasonable notice of such hearing to all persons known to be interested therein and posting a notice thereof on such tree or shrub. Within three days after such hearing, the tree warden shall render a decision granting or denying the application, and the party aggrieved by such decision may, within ten days, appeal therefrom to the superior court for the judicial district within which such town or borough is located. The tree warden may, with the approval of the selectmen or borough warden, remove any trees or other plants within the limits of public highways or grounds under the tree warden's jurisdiction that are particularly obnoxious as hosts of insect or fungus pests."

because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 614–15, 903 A.2d 191 (2006).

We begin our analysis by examining what impact, if any, *DeConti* has on the present matter. That case involved the application of the identifiable victim subject to imminent harm exception to discretionary immunity, raised on appeal after the trial court rendered judgment granting a motion to strike.[10] *DeConti* v.

---

[10] In *DeConti* this court noted that " '[t]he standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied.' . . . *Connecticut Carpenters Benefit Funds* v. *Burkhard Hotel Partners II, LLC*, 83 Conn. App. 352, 361, 849 A.2d 922 (2004). '[W]here it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike.'

*McGlone,* supra, 88 Conn. App. 274–75. Nonetheless, the defendants place great emphasis on the following language in *DeConti*: "In the present case, the duty to inspect and to care for trees undoubtedly involves the exercise of judgment, and, as such, is properly classified as a discretionary act." Id., 273.

Reviewing the appellate record and briefs in *DeConti,* it is apparent that the plaintiff in that case conceded that the duties of a municipality and its employees as they relate to the care of trees, under the facts presented, were discretionary. *DeConti* v. *McGlone,* Appellate Court Records & Briefs, January Term, 2005, Plaintiff's Brief p. 6 ("[i]t is conceded that any duty owed by [the defendants] to the plaintiff was discretionary or 'governmental' in nature"). Accordingly, the question of whether a tree warden's duties are discretionary or ministerial in nature was not contested; consequently, that court's statement regarding the discretionary nature of a duty to inspect or to care for trees properly is viewed as dictum. The plaintiffs in the present case have made no similar concession concerning the nature of Cotta's duties as tree warden. Moreover, in contrast to *DeConti,* this case does not involve a challenge to a motion to strike. In light of the foregoing distinctions, we determine that *DeConti* does not control the present matter.

Turning to § 23-59, we agree with the defendants that the statute's language provides that many, but not all, of the duties of a tree warden involve the exercise of discretion.[11] We are mindful, however, that our scope of review on either a motion to set aside or to direct

---

*Doe* v. *Board of Education,* 76 Conn. App. 296, 299 n.6, 819 A.2d 289 (2003)." *DeConti* v. *McGlone,* supra, 88 Conn. App. 271–72.

[11] For example, § 23-59 provides in relevant part: "Whenever, *in the opinion of the tree warden,* the public safety demands the removal or pruning of any tree or shrub under the tree warden's control, *the tree warden may cause* such tree or shrub to be removed or pruned . . . ." (Emphasis added.)

a verdict involves more than an isolated examination of the language of relevant statutes or a consideration of the allegations of the complaint; unlike the court in *DeConti*, which merely was reviewing the legal sufficiency of the complaint in considering the defendants' motion to strike; *DeConti* v. *McGlone*, supra, 88 Conn. App. 271; we must consider all the evidence presented to the jury, along with any reasonable inferences that the jury could have drawn. See *Iseli Co.* v. *Connecticut Light & Power Co.*, 211 Conn. 133, 140, 558 A.2d 966 (1989) ("[w]e must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial" [internal quotation marks omitted]).

"[T]he determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . ." (Internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 307, 999 A.2d 700 (2010); see *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988); see also *Gauvin* v. *New Haven*, 187 Conn. 180, 186, 445 A.2d 1 (1982). Generally, evidence of a ministerial duty is provided by an explicit statutory provision, town charter, rule, ordinance or some other written directive. See, e.g., *Violano* v. *Fernandez*, 280 Conn. 310, 323–24, 907 A.2d 1188 (2006). Testimony of a municipal official, however, may provide an evidentiary basis from which a jury could find the existence of a specific duty or administrative directive. See, e.g., *Gauvin* v. *New Haven*, supra, 186–87 (testimony providing evidence of nature of duty).

On the basis of our review of the record, we conclude that there is evidence from which the jury reasonably could have found that some of Cotta's duties as the town's tree warden, including a duty to inspect upon receipt of a complaint concerning a potentially hazardous tree, were ministerial. Although the town maintains

no written policies directing the conduct of its tree warden, the town's assistant director of public works, Darren Oustafine, testified at trial that the general direction provided to Cotta upon receipt of a complaint "is always the same, look at the tree, make a determination. Is it a safety concern? Is it a priority?" Moreover, Cotta himself testified that upon receipt of a complaint regarding a potentially hazardous tree, he has a nondiscretionary duty to perform an inspection.

In light of the evidence adduced, including Cotta's own statements, which were couched in mandatory language, it was appropriate for the court to decline to direct or to set aside the verdicts on the basis that the defendants' actions as a whole were discretionary as a matter of law.

II

The defendants next claim that the court erred in denying their motion to set aside the verdict because the jury's finding that Cotta's duties ·were ministerial was contrary to the law and against the weight of the evidence.

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Greci* v. *Parks*, 117 Conn. App. 658, 667, 980 A.2d 948 (2009).

The defendants argue that the jury's finding that Cotta had a ministerial duty to inspect the subject tree was not supported by the evidence. Specifically, the defendants contend that Doble's complaints did not reference hazardous trees specifically, and, thus, any alleged ministerial duty on the part of Cotta to inspect potentially hazardous trees was never triggered. Furthermore, the defendants argue that, in response to Doble's initial call, the evidence provides that Cotta, in fact, did drive to the property and perform a quick visual inspection of the trees. Because the weighing of credibility is a function of the fact finder; *Kiniry* v. *Kiniry*, 299 Conn. 308, 329, 9 A.3d 708 (2010); we are not persuaded by the defendants' arguments. Although there may have been some evidence offered to support the defendants' contention, the jury did not have to credit this evidence.

A review of the record in this case demonstrates that there was evidence from which the jury reasonably could have concluded that the defendants received several calls from Doble regarding potentially hazardous trees and that, in response, Cotta failed to perform his nondiscretionary duty to inspect these trees upon receipt of the complaints. First, the town's work orders document that Doble lodged seriatim complaints with the town regarding trees that "need attention," were losing limbs, and were "dead" or "[h]ollow." Although *Bonington* provides that a predicate discretionary determination as to specific facts at issue often precedes any subsequent ministerial response to those facts, the present matter is distinguishable. See *Bonington* v. *Westport*, supra, 297 Conn. 309 ("even when the duty to respond to a violation of law is ministerial because that specific *response* is mandated, the predicate act—determining whether a violation of law exists—generally is deemed to be a discretionary act" [emphasis in original]). In this case, however, the plaintiffs provided evidence through Cotta's own testimony

that he had a nondiscretionary duty to inspect the trees on the town's right-of-way in front of the property after receiving Doble's calls. Specifically, when questioned whether he had a "duty to go out . . . or make a response in some way," Cotta answered in the affirmative.[12] In addition, the plaintiffs provided the jury with

---

[12] With regard to Doble's calls to the town, the following trial examination took place:

"[The Plaintiffs' Counsel]: But you know what an arborist is?

"[Cotta]: Yes.

"[The Plaintiffs' Counsel]: You're one yourself?

"[Cotta]: Yes.

"[The Plaintiffs' Counsel]: And an arborist is, actually, trained to be able to recognize decay in trees, are they not?

"[Cotta]: Yes.

"[The Plaintiffs' Counsel]: And you agree that a trained arborist ought to be able to spot trees that are a potential hazard, correct?

"[Cotta]: Yes.

* * *

"[The Plaintiffs' Counsel]: All you know is that an arborist says, a tree needs attention, it could mean that the tree is a potential hazard, right?

"[Cotta]: It's an ambiguous statement, it needs attention.

"[The Plaintiffs' Counsel]: Right. It could mean—

"[Cotta]: I can't determine what her arborist saw.

"[The Plaintiffs' Counsel]: That's my point.

"[Cotta]: And the resident didn't convey that to the work request.

"[The Plaintiffs' Counsel]: I hear you. That's exactly my point. You didn't know what needing attention meant, correct?

"[Cotta]: No.

"[The Plaintiffs' Counsel]: It would have meant that the tree was just losing limbs, correct?

"[Cotta]: Needed pruning, yes.

* * *

"[The Plaintiffs' Counsel]: A sapling on the side of the road only four feet high, she could have been calling about that?

"[Cotta]: Unlikely.

"[The Plaintiffs' Counsel]: That's not what I'm asking you. I'm asking you, it could have been that, couldn't it?

"[Cotta]: Who would call about a sapling? Let's be fair.

"[The Plaintiffs' Counsel]: As far as you know, in 2002, it could have been [a] sapling or it could have been a tree that just lost a couple of limbs, right?

"[Cotta]: Yes.

"[The Plaintiffs' Counsel]: And could have been a tree that was a potential hazard for the people in the roadway, couldn't it?

"[Cotta]: Yes.

documentation and photographs outlining the approximate location of the subject tree. From this evidence, the jury reasonably could infer that Doble repeatedly reported to the defendants potentially hazardous trees, including the subject tree.

Moreover, the plaintiffs' primary argument to the jury was that Cotta never went to the property and performed an inspection. In support of their argument, the plaintiffs noted the absence of any documentation in the town's work order records concerning an inspection by Cotta of the trees.[13] Although Cotta testified at trial that he had performed a quick visual inspection of the trees, he contradicted his own testimony by agreeing that performing a quick visual inspection is "not the same thing as saying you inspected it at all . . . ." In addition, the plaintiffs' counsel sought to impeach Cotta's testimony through the introduction of deposition evidence, wherein Cotta admitted that he had not

---

"[The Plaintiffs' Counsel]: And so as the tree warden of the town of Darien, that's a call that concerns you?

"[Cotta]: It's a general work order. Yeah, I'll go out and take a look at it.

"[The Plaintiffs' Counsel]: That's your duty to go out and have a look or to make a response in some way?

"[Cotta]: Yes, I go out.

"[The Plaintiffs' Counsel]: That's your duty, correct? That's your duty to respond in some way?

"[Cotta]: Yes.

* * *

"[The Plaintiffs' Counsel]: And as far as a tree needing attention, when you hear a report that arborist says that a tree needs attention because you don't know exactly what it means, it could have meant potential hazard, and you knew that in 2002?

"[Cotta]: [I]t could have been a potential hazard, yes."

[13] Oustafine testified at trial that completed work order information for the town's tree warden is entered into the town's records, including a description of "whatever action he took." Oustafine noted, however, that information regarding job completion is not always recorded with specificity. Oustafine also testified that Cotta would provide a narrative recitation of services rendered and hours worked when invoicing the town for his services.

inspected the trees for decay and, furthermore, that he had not inspected the trees "for any reason."

Furthermore, although Cotta testified at trial that he had gone to the property and pruned the subject tree in 2004, the plaintiffs' counsel introduced deposition testimony wherein Cotta stated that he had not returned to the property between March 14, 2003, and July 11, 2006. Thus, numerous issues were raised concerning Cotta's credibility, and the jury was free to decide that Cotta was not credible and to resolve the claim in favor of the plaintiffs that he failed to respond to any of the complaints by going to the property to inspect the trees. See *Kiniry* v. *Kiniry*, supra, 299 Conn. 329 ("It is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review." [Internal quotation marks omitted.]).

The defendants further argue that the evidence does not support the jury's findings that Cotta breached ministerial duties to maintain and to remove the subject tree. In addition, the defendants contend that, even if the jury could have found that Cotta failed to inspect the subject tree, such finding would not foreclose the application of governmental immunity. Specifically, the defendants argue that the "fundamental duties at issue, namely the manner in which the inspection was or is to be performed, the identification of the subject tree as an immediate hazard, and the decision to remove the tree remain within Cotta's discretion." Thus, the defendants contend that the doctrine of governmental immunity should apply to bar the plaintiffs' claims because all of Cotta's alleged duties either lead to or follow from a discretionary determination as to the condition of the subject tree. We disagree.

It is undisputed that Cotta, acting in his capacity as the town's tree warden, is a municipal employee. Therefore, Cotta, and, by extension, the town, may be liable for the misperformance of ministerial acts, but are entitled to immunity in the performance of governmental acts, including acts that are discretionary in nature. See *Violano* v. *Fernandez*, supra, 280 Conn. 318. The defendants' argument, however, misses the point. In order for the defendants to benefit from the application of governmental immunity, Cotta must have performed a governmental act. As noted, the jury was free to assess Cotta's credibility and to determine that he had failed to perform an inspection of the subject tree. By failing to perform any inspection upon receipt of Doble's seriatim complaints—an act that the jury, based on the evidence, reasonably could have found to be his ministerial duty—Cotta never placed himself in a position from which he could exercise his discretion and, hence, entitle the defendants to immunity for his actions.[14] Compare *Evon* v. *Andrews*, 211 Conn. 501, 506, 559 A.2d 1131 (1989) (if inspection occurs, method of performing inspection involves exercise of discretion).

On the basis of our review of the record, and in consideration of the procedural posture in which this appeal comes before us, the defendants have not established any basis for us to vacate the jury's verdict and to afford them the protection of governmental immunity. To hold otherwise would incentivize the inaction of public officials faced with the duty of performing acts that they, themselves, admit are ministerial in nature. The jury reasonably could have concluded that

[14] Furthermore, the plaintiffs' expert witness opined that the subject tree would have exhibited signs of decay in 2002 and 2003, when Doble lodged her complaints with the town. Accordingly, the jury could infer that a reasonable tree warden, had he performed an inspection, would have determined that the subject tree was a hazard.

Cotta failed to perform his ministerial duty to inspect a potentially hazardous tree despite undisputed receipt of multiple reports of its deteriorating condition and that his failure to act proximately caused the plaintiffs' injuries in this case. Accordingly, we conclude that the court did not abuse its broad legal discretion in refusing to direct or to set aside the jury's verdicts.

The judgment is affirmed.

In this opinion the other judges concurred.