******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GRAYSON DIMICELI ET AL. *v.* TOWN
OF CHESHIRE
(AC 36747)

Alvord, Prescott and Bear, Js.

*Argued October 15, 2015—officially released January 5, 2016*

(Appeal from Superior Court, judicial district of New
Haven, B. Fischer, J.)

*Benjamin H. Pomerantz*, for the appellant (named
plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was
*Katherine E. Rule*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. In this personal injury action, the plaintiff Grayson DiMiceli, through his parents and next friends, the plaintiffs Eric DiMiceli and Sabrina DiMiceli, appeals from the summary judgment rendered by the trial court in favor of the defendant, the town of Cheshire.[1] Grayson allegedly was injured while playing on a seesaw at a playground operated and maintained by the defendant. The plaintiffs' complaint initially alleged only negligence by the defendant and a derivative claim for medical expenses, but later was amended to include a public nuisance count. The plaintiffs claim that the court improperly determined that the defendant was entitled to judgment as a matter of law because (1) their negligence count was barred by the doctrine of governmental immunity, and (2) the amended count alleging a public nuisance was barred by the applicable statute of limitations and did not relate back to the negligence count. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On June 13, 2009, Grayson, who was seven years old at that time, was playing with another child at the Quinnipiac Recreation Area, a public park that is owned and operated by the defendant. Grayson and the other child were using a seesaw, when, without warning, the other child jumped off the equipment, causing Grayson's seat to crash to the ground. Grayson suffered injuries as a result of the incident, including spinal compression fractures.

The plaintiffs commenced this action against the defendant on April 26, 2011.[2] The initial complaint contained two counts, the first alleging negligence on behalf of Grayson, and the second asserting a derivative claim for medical expenses on behalf of the parents individually.[3] According to the plaintiffs, the defendant had been negligent because it had failed to embed partial car tires or other shock absorbing material in the ground directly beneath the seesaw seats or to use such material on the underside of the seats themselves, had failed to ensure that there were sufficient wood chips or other loose filled material covering the ground around the seesaws or had failed to replace the old fashioned seesaw with a newer, spring-loaded version. The case was assigned for a jury trial to begin on September 24, 2013. On May 7, 2013, the defendant filed a motion for permission to file a summary judgment motion in accordance with Practice Book § 17-44. The court granted the motion on May 20, 2013, absent objection, and the summary judgment motion and supporting memorandum of law attached to the motion for permission were deemed filed as of that date.

The plaintiffs were granted two extensions of time in which to respond to the motion for summary judg-

ment. On October 16, 2013, the plaintiffs filed a request for leave to amend the complaint, seeking to add new factual allegations to the existing negligence count and to add a new count sounding in public nuisance. The proposed second amended complaint was attached to the motion. The defendant objected to the request for leave to amend, arguing that the proposed amendment was unseasonable and would prejudice the defendant because it had already filed its motion for summary judgment. The court scheduled argument on the motion for leave to amend for November 25, 2013. In the interim, the plaintiffs filed a response to the defendant's objection to the motion for leave to amend as well as a supplemental response to the defendant's motion for summary judgment.

Following the November 25, 2013 hearing, the court granted the plaintiffs' motion for leave to amend its complaint and accepted the attached amended complaint as having been filed on that date. The defendant filed an answer with special defenses to the new operative complaint on December 5, 2013, in which it asserted a statute of limitations special defense directed at the nuisance count. The defendant later filed a supplemental memorandum of law in support of its motion for summary judgment, which included new arguments addressing the propriety of the nuisance count. The plaintiffs also filed a supplemental brief in opposition to summary judgment.

On March 13, 2014, the court issued a decision rendering summary judgment in favor of the defendant on all counts of the operative complaint. The court concluded that the defendant was entitled to judgment as a matter of law on the negligence count because governmental immunity, as codified in General Statutes § 52-557n (a) (2) (B), shields municipalities from liability for negligent discretionary acts, and the court determined as a matter of law that the maintenance of the seesaw on which Grayson was injured involved a discretionary function. The court further concluded with respect to the public nuisance count that it had not been filed within the applicable statute of limitations and did not relate back to the original negligence count because the allegations in support of the public nuisance count were critically different from those underlying the negligence count. Because neither the negligence count nor the nuisance count was viable, the court also rendered judgment with respect to the parents' derivative claim for medical expenses.[4] The plaintiffs filed a motion for reconsideration and reargument, which the court denied. This appeal followed.

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Barbee* v. *Sysco Connecticut, LLC*, 156 Conn. App. 813, 817–18, 114 A.3d 944 (2015).

I

We turn first to the plaintiffs' claim that the court improperly rendered summary judgment on the negligence count on the basis of its determination that recovery for negligence was barred by the doctrine of governmental immunity. In support of this claim, the plaintiffs first argue that a genuine issue of material fact exists as to whether the defendant's duty to inspect and maintain the playground and seesaw was ministerial or discretionary in nature, and that the existence of such a disputed issue of fact should have precluded the court from granting summary judgment. The plaintiffs further argue that it is contrary to public policy to grant governmental immunity if a municipality claims to have no policies, standards, or guidelines in place to ensure that its playgrounds are safe for children. We are not persuaded by the plaintiffs' first argument and decline to consider the second because it was not raised to or decided by the trial court.

A

The plaintiffs first argue that a genuine issue of material fact exists with respect to whether the defendant's duty to inspect and maintain the playground and seesaw was ministerial or discretionary in nature. We are not persuaded.

We begin by setting forth the well settled law of this state regarding the liability of municipalities and their agents. According to our Supreme Court, "[a] municipality itself was generally immune from liability for its tortious acts at common law . . . . [The court has] also recognized, however, that governmental immunity may be abrogated by statute. . . . General Statutes

§ 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . [Our Supreme Court] previously [has] concluded that [t]his language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. . . .[5]

"Subdivision (2) of § 52-557n (a) lists two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Citations omitted; footnote added; internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47–48, 881 A.2d 194 (2005). The statute, thus, distinguishes between discretionary acts and those that are ministerial in nature, with liability generally attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts. See *Coley* v. *Hartford*, 140 Conn. App. 315, 322, 59 A.3d 811 (2013), aff'd, 312 Conn. 150, 95 A.3d 480 (2014).

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." (Citation omitted; internal quotation marks omitted.) Id., 323.

"In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. . . . A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs." (Citations omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 656, 943 A.2d 507 (2008). "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint." (Citation omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000). "[W]hether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant

to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Emphasis in original; internal quotation marks omitted.) *Grignano* v. *Milford*, supra, 655.

In their complaint, the plaintiffs allege that the defendant failed to maintain the park and the seesaw in a safe condition and that "[t]he duties owed by the defendant were ministerial in nature." The plaintiffs allege three possible sources for the defendant's alleged ministerial duties: the United States Consumer Product Safety Commission's Handbook for Public Playground Safety (CPSC standards); chapter 11, article I, § 11-1 of the Cheshire Code of Ordinances (ordinance); and internal standards established by the defendant's Parks and Recreation Department. We agree with the well reasoned analysis set forth by the trial court in its memorandum of decision, in which it aptly concludes that none of the sources cited by the plaintiffs imposed a ministerial duty with respect to how the defendant was supposed to inspect and maintain its playgrounds and playground equipment.

The trial court reasoned as follows: "With respect to the CPSC standards, the plaintiff[s] [point] to General Statutes § 21a-12a. Section 21a-12a provides in relevant part: 'The Commissioner of Consumer Protection shall adopt regulations . . . to develop standards for playground equipment . . . . Such regulations shall be equivalent to the standards established by the Handbook for Public Playground Safety produced by the United States Product Safety Commission.' The plaintiff[s] [argue] that this statute imposes a ministerial duty on the defendant to maintain the seesaw in accord with the industry standards set forth by CPSC, that the defendant failed to do so, and that the defendant is therefore liable in negligence.

"Section 21a-12a instructs the Commissioner of Consumer Protection to adopt regulations. [Section 21a-12a-2 of the Regulations of Connecticut State Agencies] provides: 'The guidelines for playground equipment adopted by the United States Consumer Product Safety Commission in its Handbook for Public Playground Safety are adopted, and herein incorporated by reference, *as voluntary guidelines for playground equipment in this state.*' . . . Contrary to the plaintiff[s'] argument, the CPSC standards do not impose binding ministerial duties on the defendant but instead are available to municipalities for guidance. Accordingly, the CPSC standards do not and did not create ministerial duties on the defendant.

"With respect to the ordinance, the plaintiff[s] [argue]

that a sentence in [the ordinance] creates a ministerial duty. [The ordinance] states: '[t]he town's parks and recreational facilities shall be maintained for the residents of Cheshire and guests in their company.' The plaintiff[s] essentially [argue] that the use of the imperative 'shall' indicates that the ordinance requires the defendant to maintain the park and the seesaw. The court disagrees with [that] interpretation. . . . [I]n order for a duty to be considered ministerial, it must be 'performed in a *prescribed manner* without the exercise of judgment or discretion.' . . . The ordinance does not prescribe any particular manner of performance; it simply states that recreational facilities shall be maintained. . . . Absent such prescription, the ordinance does not and did not impose a ministerial duty on the defendant. . . .

"With respect . . . to the internal standards of the Parks and Recreation Department, the plaintiff[s] [point] to the deposition testimony of Robert Ceccolini, Director of the Cheshire Parks and Recreation Department. The plaintiff[s] [argue] that Ceccolini's testimony undercuts the defendant's contention that maintenance of the seesaw was a discretionary function. Specifically, the plaintiff[s] [argue] that Ceccolini described a number of maintenance and inspection standards that employees of the Parks and Recreation Department were instructed to follow. These instructions, the plaintiff[s] [argue], are in the nature of directives imposing a ministerial duty, vitiating the defendant's governmental immunity and defeating the defendant's motion for summary judgment.

"Ceccolini testified that the employees of the Parks and Recreation Department are to 'maintain the parks, that's part of their job, as they go through their day.' . . . In response to a question asking if there are 'checklists or guidelines that your employees . . . are given . . . to give them an idea of the sort of things they should be looking for,' Ceccolini answered '[t]here are no checklists, no.' . . . Ceccolini admitted that '[w]ood chips are replaced on a fairly regular basis.' . . . . However, he augmented that answer by stating that the Department of Parks and Recreation adds wood chips '[e]very year or so, every year or two we add new wood chips on an *as-needed basis*.' . . . Based on this testimony, whatever internal standards the Parks and Recreation Department had were discretionary in nature." (Citations omitted; emphasis in original; footnotes omitted.)

The plaintiffs suggest on appeal that the court's analysis as it pertains to the internal standards of the Parks and Recreation Department conflicts with or overlooks our decision in *Wisniewski* v. *Darien*, 135 Conn. App. 364, 374, 42 A.3d 436 (2012). In particular, the plaintiffs cite to language in *Wisniewski* indicating that the testimony of a municipal official concerning the defendant

town's duty to inspect or maintain its property may be sufficient to establish that such a duty is ministerial in nature. Id., 374. Nothing in the trial court's decision granting summary judgment in this case conflicts with that proposition. The present case is distinguishable from *Wisniewski* because, unlike in that case, the plaintiffs here have failed to produce testimonial evidence from which a ministerial duty could be inferred and, therefore, have failed to raise a genuine issue of material fact.

The plaintiffs in *Wisniewski* had been injured when part of a tree that was located on town land and that had been the subject of several reports to the town as a potential hazard fell on the car in which the plaintiffs were travelling. Id., 366–67. A town official testified at trial that once the town was notified of a problem with a tree, the response was always the same: to have a tree warden inspect the tree to determine if there was a safety concern. Id., 375. The tree warden also testified "that upon receipt of a complaint regarding a potentially hazardous tree, he has a nondiscretionary duty to perform an inspection." Id. We concluded that this testimony was sufficient evidence to support the jury's finding that the warden had a ministerial duty to inspect the subject tree. Id. In contrast, in the present case, there is no indication that the defendant ignored any requests for inspection of the playground or seesaw, and the plaintiffs have failed to cite to any portion of Ceccolini's deposition, submitted at summary judgment, that indicates that the defendant had any specific policy in place or had prescribed a nondiscretionary manner for inspecting and maintaining its playgrounds.[6]

On the basis of our plenary review of the pleadings and submissions of the parties, we conclude that the plaintiffs have failed to show the existence of a genuine issue of material fact that would preclude the granting of summary judgment. Because it was legally and logically correct for the trial court to have concluded that the acts and omissions alleged in the complaint necessarily were discretionary in nature and, thus, not ministerial; see *Grignano* v. *Milford*, supra, 106 Conn. App. 656; see also *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989) (what constitutes reasonable, proper, or adequate inspection involves exercise of judgment and, thus, is discretionary in nature); the court properly determined that the defendant was entitled to judgment as a matter of law on the defendant's governmental immunity defense.

B

The plaintiffs also argue on appeal that it contravenes public policy to grant governmental immunity to a municipality that ignores, or pretends not to adopt, basic playground safety requirements intended to protect children. The defendant counters that the plaintiffs' public policy argument was never raised in the summary

judgment pleadings or during oral argument on the motion, and, therefore, we should not consider the argument on appeal. We agree with the defendant that the public policy aspect of the plaintiffs' claim was not properly preserved for appellate review, and, accordingly, we decline to address it.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014); see also *Nova-metrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214 n.8, 618 A.2d 25 (1992) (declining to address public policy argument raised for first time on appeal).

Having thoroughly reviewed the pleadings and other submissions before the court, as well as the transcript of oral argument on the motion for summary judgment, we conclude that the plaintiffs failed to preserve their public policy argument by distinctly raising the issue to the trial court as a basis for denying summary judgment. In their reply brief on appeal, the plaintiffs direct our attention to portions of their memorandum in opposition to summary judgment and to their motion for reargument. Although the referenced passages arguably touch upon the policy arguments that the plaintiffs now seek to assert on appeal, the passages do not support a conclusion that the violation of public policy claim was distinctly raised to the trial court as a basis for denying summary judgment.

Further, even if we were persuaded that the issue had been distinctly raised to the trial court, that court never decided the issue. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998) (appellate courts "will not address issues not decided by the trial court"). The trial court never mentions public policy in its memorandum of decision granting the defendant's motion for summary judgment, and to the extent that it was

raised in the plaintiffs' motion for reargument, the court denied that motion without comment. Even if the plaintiffs believed that the court overlooked an argument that they raised in opposition to summary judgment, they failed to indicate this in their motion for reargument. Because the public policy argument advanced by the plaintiffs on appeal was never distinctly raised to or decided by the trial court, we decline to consider it on appeal.

## II

Finally, we turn to the plaintiffs' claim that the court improperly rendered summary judgment in favor of the defendant on their public nuisance count. According to the plaintiffs, the court incorrectly determined that their nuisance count did not relate back to the original negligence count and, thus, was barred pursuant to the applicable statute of limitations.[7] The plaintiffs do not dispute the court's determination that their public nuisance count first appeared in their October 16, 2013 second amended complaint, and that this was well over four years after Grayson sustained his injuries and, accordingly, well outside of the applicable limitation period. Rather, the plaintiffs argue only that the court improperly rejected their claim that the nuisance count, as an amendment to the initial complaint, related back to the original negligence count for purposes of calculating the limitations period, and that, because the negligence count had been filed within the statute of limitations, the nuisance count also should have been deemed timely.[8] We disagree.

We begin by setting forth the applicable law as well as our standard of review. "Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims. . . . To relate back to an earlier complaint, the amendment must arise from a single group of facts. . . . In determining whether an amendment relates back to an earlier pleading, we construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . Finally, in the cases in which [our Supreme Court has] determined that an amendment does not relate back to an earlier pleading, the amend-

ment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding upon previous allegations." (Internal quotation marks omitted.) *J. Wm. Foley, Inc.* v. *United Illuminating Co.*, 158 Conn. App. 27, 63–64, 118 A.3d 573 (2015).

As this court recently indicated in *Briere* v. *Greater Hartford Orthopedic Group, P.C.*, 158 Conn. App. 66, 74, 118 A.3d 596, cert. denied, 319 Conn. 910, 123 A.3d 882, cert. granted, 319 Conn. 950, A.3d (2015), in determining whether an amendment to a complaint relates back for purposes of applying the statute of limitations, we will employ a de novo standard of review. See also *Sherman* v. *Ronco*, 294 Conn. 548, 554 n.10, 985 A.2d 1042 (2010) ("the de novo standard of review is *always* the applicable standard of review for resolving whether subsequent amendments to a complaint relate back for purposes of the statute of limitations" [emphasis in original]).[9]

Having reviewed the pleadings, and construing them broadly and realistically, as we must, we agree with the trial court's analysis and conclusion that the nuisance count fails to relate back to the negligence count. As the court stated in its memorandum of decision, "[t]he plaintiff[s'] allegations of public nuisance are critically different from the allegations of negligence. In [their] April 29, 2011 complaint, the plaintiff[s] [allege] the defendant was negligent in one of more of the following ways: '[i]t failed to place partial car tires or some other shock absorbing material embedded in the ground underneath the seats of the seesaw . . . [i]t failed to use partial car tires or some other shock absorbing material secured on the underside of the seats of the seesaw . . . [i]t failed to replace the old-fashioned seesaw with a spring-loaded type of seesaw . . . [i]t failed to provide the minimum required protective surfacing of 9 inches of loose filled material under the seesaws . . . .' The common thread of these allegations is that the plaintiff[s'] injuries are the result of the *failure* of the defendant to do something. In contrast, in the second amended complaint, the plaintiff[s] [allege] that the defendant 'committed various positive acts with respect to the seesaw,' which positive acts constituted public nuisance. The positive acts cited by the plaintiff[s] include: '[i]nstalling a type of seesaw at the Quinnipiac Recreation area that contained overtly hazardous components . . . [i]nstalling seesaws at the Quinnipiac Recreation area in a location that had insufficient ground cover or some other form of cushioning in the seesaw's fall zone . . . [c]onstructing a fall zone underneath the seesaw in question that was inherently unsafe for anyone attempting to use the seesaw element.' . . . The common thread of these allegations is that the plaintiff[s'] injuries are due to a positive act of the defendant.

"The alleged actionable occurrences in the two claims are inherently conflicting. The actionable occurrence in the negligence claim is the failure to act, whereas the actionable occurrence in the public nuisance claim is the defendant's positive act of installing the seesaw. Indeed, the prima facie public nuisance claim against municipalities requires a positive act on the part of the municipality. In the public nuisance context, [our] Supreme Court has stated that '[c]ommon usage does not equate a failure to act with an act.' . . . In the present case, however, the plaintiff[s] [ask] the court to decide that prior allegations of negligent conduct would have given the defendant 'fair notice' . . . that it would have to defend a public nuisance claim. The plaintiff[s'] public nuisance claim does not relate back to the original claim of negligence because the allegations of the original complaint failed to notify the defendant that claims based on its allegedly intentional conduct were imminent." (Citations omitted; emphasis in original; footnote omitted.)

It is undisputed that the nuisance count was filed outside of the applicable statute of limitations. Having determined that the court correctly concluded as a matter of law that the nuisance count did not relate back to the negligence count, we conclude that the court properly rendered summary judgment in favor of the defendant on its statute of limitations defense.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that only Grayson DiMiceli appeals from the trial court's judgment and he does not pursue in this appeal any derivative claims made by Eric DiMiceli and Sabrina DiMiceli. Nonetheless, for purposes of clarity and convenience, we refer in this opinion to the claims advanced on appeal as made by the plaintiffs collectively, and refer to Grayson DiMiceli as Grayson where necessary.

[2] We note that the defendant later filed a third party complaint impleading the other child involved in the incident, but it later withdrew that action prior to the filing of the present appeal.

[3] On May 19, 2011, the plaintiffs amended their complaint as of right by filing a corrected civil summons. The initial summons had listed the parents as having brought suit only on behalf of their minor child, not as individual plaintiffs.

[4] The plaintiffs raise no challenge to that aspect of the court's decision in the present appeal.

[5] Our Supreme Court has cautioned that "[s]tatutes that abrogate or modify governmental immunity are to be strictly construed" because if "a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988).

[6] We note that only certain portions of Ceccolini's deposition transcript were submitted as evidence before the trial court. In their arguments on appeal, the plaintiffs seek to rely on portions of Ceccolini's deposition that were never submitted to the trial court as part of the summary judgment proceedings and, thus, that are not properly before us in reviewing the court's decision to render summary judgment.

[7] Neither party identifies in their appellate briefs which statute of limitations was applicable to the public nuisance count asserted by the plaintiffs, nor did they do so in the pleadings before the trial court. In its memorandum of decision granting summary judgment, the trial court cites to and relies

upon General Statutes § 52-577, which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Public nuisance is a tort, defined as "an unreasonable interference with a right common to the general public." 4 Restatement (Second), Torts, § 821B (1) (1979). We previously have indicated, however, that if a nuisance claim, whether public or private, is predicated on a defendant's alleged negligence, the nuisance count must be filed within the two year limitations period set forth in General Statutes § 52-584. See *Sinotte* v. *Waterbury*, 121 Conn. App. 420, 428–31, 995 A.2d 131, cert. denied, 297 Conn. 92, 996 A.2d 1192 (2010). Section 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, *caused by negligence* . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ." (Emphasis added.) Neither party, however, challenges on appeal the trial court's reliance on § 52-577. Moreover, the public nuisance count at issue here was filed more than four years after the cause of action accrued and, thus, was well outside the limitation periods set forth in both §§ 52-577 and 52-584. Accordingly, for purposes of our analysis, we need not decide which specific limitation period applies in this particular case.

[8] To the extent that the plaintiffs, in their appellate brief, rely on General Statutes § 52-595 and allege fraudulent concealment as a basis for tolling the statute of limitations on the nuisance count, we decline to review this claim. The plaintiffs neither raised this defense in their pleadings nor argued this point to the trial court. See *White* v. *Mazda Motor of America, Inc.*, supra, 313 Conn. 619–20.

[9] We note that, since *Sherman* was decided, our Supreme Court has, on at least two occasions, indicated that "[t]his court previously has not determined whether, on appeal, the trial court's application of the relation back doctrine is subject to an abuse of discretion standard or a de novo review." *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 660 n.15, 81 A.3d 200 (2013); see also *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 559, 51 A.3d 367 (2012) (same). Both *Austin-Casares* and *Grenier* cite to *Dimmock* v. *Lawrence & Memorial Hospital, Inc.*, 286 Conn. 789, 798–800, 945 A.2d 955 (2008), which predated *Sherman* and in which the court stated that it was unnecessary to decide the appropriate standard of review at that time because the party that was seeking the benefit of the relation back doctrine could not prevail under either standard. In *Sherman*, the court explicitly noted that *Dimmock* had left the precise standard undecided but that it was now unequivocally deciding that review was de novo because the interpretation of pleadings is always a question of law for the court. *Sherman* v. *Ronco*, supra, 294 Conn. 554 n.10. Because neither *Austin-Casares* nor *Grenier* mentions S*herman* or purports to overrule it with respect to the applicable standard of review, we follow the express standard announced in *Sherman* absent some further clarification by our Supreme Court.