******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN DOE *v.* CITY OF NEW HAVEN ET AL.
(AC 44406)

Prescott, Clark and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, the city of New Haven, the city's board of education and J, a high school principal, for injuries he allegedly sustained as a result of sexual abuse by F, a theater teacher at the high school. F supervised and directed an extracurricular school play in which the plaintiff had a part. F occasionally met with the plaintiff and other students involved in the play for one-on-one singing and acting lessons. Although J did not know that F met with students privately for lessons, other employees at the high school were aware of those meetings. F sent text messages from her personal cell phone to the plaintiff and other students about matters related to the play. The conversations between F and the plaintiff eventually became more intimate, and the plaintiff began going to F's classroom in the mornings before classes started and they would kiss. The plaintiff, along with other students at the high school, was enrolled in afternoon classes at an arts center and therefore was dismissed from the high school at 12:30 p.m. Monday through Thursday. One Friday, when the plaintiff did not have classes at the arts center, he went to F's classroom after his last class ended at 12:30 p.m. and she performed oral sex on him. On another day, the plaintiff and F went to an adjacent dressing room adjoining the auditorium stage. A security guard entered the dressing room and discovered them; the police and high school administration were immediately notified and an investigation ensued. The plaintiff alleged, inter alia, that the defendants failed to supervise employees and classrooms and teachers' use of cell phones. The plaintiff further alleged that J violated a ministerial duty to report suspected child abuse under the mandatory reporting statutes (§ 17a-101 et seq.) because she had reasonable cause to suspect that, prior to the incident between the plaintiff and F in the dressing room, the plaintiff or other students were imminently at risk of being sexually abused by F. The defendants thereafter filed a motion for summary judgment, claiming that they were entitled to governmental immunity. The trial court granted the defendants' motion, concluding, inter alia, that nothing in the record supported the plaintiff's assertion that the defendants had knowledge of or reasonable cause to suspect that, prior to the date of the incident in the dressing room, F had been sexually abusing the plaintiff. The court also concluded that governmental immunity barred the plaintiff's claims of negligence that arose from discretionary acts by the defendants because he failed to establish a genuine issue of material fact as to whether he was an identifiable person subject to imminent harm. The trial court rendered judgment for the defendants, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly concluded that no genuine issue of material fact existed as to whether J breached the ministerial duty under § 17a-101a to report a reasonable suspicion of child abuse or that the defendants violated ministerial duties to prohibit free class periods and to take attendance in every class:

a. The plaintiff failed to demonstrate the existence of a genuine issue of material fact as to whether J or any other staff member had reasonable cause to suspect that F was sexually abusing or exposing the plaintiff to an imminent risk of sexual abuse: F's personnel file was devoid of complaints or disciplinary actions prior to the events at issue, her application for her teaching position was accompanied by positive recommendations from her references, there was nothing inherently suspicious about a teacher occasionally meeting with a student privately in connection with a supervised extracurricular activity, and, although the school administration knew F had collected contact information from the students involved in the play, neither that nor the nontraditional, relaxed setting of F's classroom that included a couch would cause a reasonable person to suspect that any of those students were at imminent risk for

sexual abuse; moreover, none of the evidence suggested that J or any other staff member was aware that F had exchanged sexually suggestive messages with the plaintiff, as neither F nor the plaintiff disclosed to anyone that they were communicating by text message; furthermore, the plaintiff ensured that he and F were alone before any inappropriate contact occurred between them, both took measures to be discreet and no staff member had witnessed them engaging in sexual conduct.

b. Contrary to the plaintiff's assertion, J's deposition testimony was insufficient to give rise to genuine issues of material fact as to whether the defendants violated ministerial duties requiring that attendance be taken in every class and prohibiting students from having free periods in their class schedules: J did not testify unequivocally that she had communicated to her employees a mandatory method for creating class schedules without free periods but, rather, highlighted a general practice that lacked the specificity necessary to establish a ministerial duty, and her testimony did not constitute the specific and clearly stated directives to school employees required to establish a ministerial duty to take attendance in every class and notify parents about student absences, as J merely observed that no student should have had a free period in his or her class schedule and that students were dismissed early when their schedules ended before the school day concluded; moreover, even if J's testimony were sufficient to give rise to a genuine issue of material fact as to whether the defendants had a ministerial duty to take attendance in every class, the defendants still would be entitled to summary judgment because there was no evidence that they breached that duty; furthermore, contrary to the plaintiff's related contention that he was allowed to visit F's classroom unnoticed because the defendants failed to account for students who were dismissed early but did not leave the high school building, J's testimony plainly established that there was no general practice or requirement for staff members to account for students permitted to leave the building, much less a clear directive compelling them to account for the whereabouts of those students in a prescribed manner.

2. The plaintiff's claim that he fell within the identifiable person-imminent harm exception to discretionary act immunity was unavailing, as nothing in the record gave rise to a genuine issue of material fact that it would have been apparent to J or other staff members that F was so likely to harm the plaintiff that the defendants had an unequivocal duty to act to prevent such harm: the record made clear that the plaintiff and F took steps to avoid raising suspicion about the nature of their relationship, and there was no evidence to suggest that the plaintiff's repeated visits to F's classroom should have made it apparent that a sexual assault was imminent, particularly when the plaintiff had an ostensibly legitimate reason for visiting F's classroom due to his involvement in the school play; moreover, the defendants received no complaints concerning F prior to the discovery of the abuse, her recommendations for the theater teaching position were all positive, and nothing in the record suggested that any staff member reasonably would have anticipated that a sexual assault of the plaintiff or any student would be the immediate result of F's relaxed classroom setting, particularly in light of the fact that it was a space intended for dramatic arts instruction; furthermore, there was no basis in the record to conclude that J or any staff member wilfully ignored circumstances that otherwise would have alerted them to the possibility of imminent and immediate harm, as they were under no duty to ask questions beyond that which was immediately apparent.

Argued March 8—officially released August 23, 2022

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wahla, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Rosalie D. Louis*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was

*Beatrice S. Jordan*, for the appellees (defendants).

*Opinion*

CLARK, J. The plaintiff, John Doe,[1] brought this negligence action against the defendants, the Board of Education of the City of New Haven (board) and Edith Johnson, principal of Wilbur Cross High School (high school), for injuries he allegedly sustained as a result of sexual abuse by Jennifer Frechette, a former teacher at the high school. The plaintiff appeals from the trial court's decision rendering summary judgment in favor of the defendants on the ground that the defendants were entitled to governmental immunity.[2] The plaintiff claims that the court improperly concluded that (1) no genuine issues of material fact existed with respect to whether Johnson had a ministerial duty to report suspected child abuse under General Statutes § 17a-101 et seq., (2) Johnson's deposition testimony did not establish the existence of two additional ministerial duties—specifically, a duty to prohibit free class periods and a duty to take attendance, and (3) the plaintiff was not an identifiable person subject to imminent harm for purposes of the identifiable person-imminent harm exception to governmental immunity for discretionary acts.[3] We affirm the judgment of the trial court.

The following facts, which we view in the light most favorable to the plaintiff as the nonmoving party, and procedural history provide the necessary background for our resolution of this appeal. During the 2016–2017 academic year, the plaintiff was fifteen years old and a sophomore at the high school. He and approximately sixty to seventy-five students at the high school were enrolled in afternoon classes at the Educational Center for the Arts (arts center) and therefore were dismissed from the high school at 12:30 p.m. Monday through Thursday.

Frechette began working for the board as a theater teacher at the high school in 2013. It was her first experience teaching high school students. Prior to that position, she had taught second and third grade students for fifteen years. The board offered Frechette the position after conducting a background check, which revealed no prior criminal history, and contacting her professional references, each of whom provided a positive recommendation. Prior to the events giving rise to this appeal, neither Johnson nor the board had received any complaints about Frechette, and her personnel file was devoid of any disciplinary actions.

In addition to her teaching duties, Frechette supervised and directed an extracurricular school play. In October, 2016, Frechette held a meeting for students interested in participating in the play and asked them to disclose their contact information, including a cell phone number, and sign a commitment form.[4] Frechette collected this information to communicate with students about the rehearsal schedule. Frechette also occa-

sionally met with students involved in the play for one-on-one singing and acting lessons. Johnson did not know that Frechette met with students privately for lessons, but the school's guidance counselor and other teachers were aware of that.

The plaintiff was not enrolled in any of Frechette's classes, but he auditioned for and was cast in the play. In November, 2016, Frechette began to send text messages from her personal cell phone to the plaintiff and other students about rehearsals and matters related to the play. Subsequently, after learning that the plaintiff was not performing well in his English class, Frechette told the plaintiff's English teacher that she would "get [the plaintiff] back on track" and began sending text messages to the plaintiff about his English assignments. The plaintiff also sent text messages to Frechette after rehearsals to inquire about whether she had any feedback about his performance. Eventually, the plaintiff and Frechette's conversations became more intimate, and Frechette disclosed to the plaintiff that she was having marital problems.[5]

By December, 2016, Frechette and the plaintiff had begun exchanging sexually suggestive messages. One evening in mid-December, Frechette and the plaintiff discussed wanting to kiss each other. The next day, the plaintiff went to Frechette's classroom in the morning before classes started. When they were alone, the plaintiff approached Frechette to hug her and she kissed him. During the following week, the plaintiff would immediately go to Frechette's classroom after he arrived at the high school in the morning, and the two would kiss. On the Friday before winter break, a day he did not have classes at the arts center, the plaintiff went to Frechette's classroom after his last high school class ended at 12:30 p.m. and remained there until approximately 2 p.m. During that time, Frechette removed her blouse and brassiere and performed oral sex on the plaintiff.

The plaintiff did not tell anyone that he and Frechette had sexual contact because she had warned him that she could "get in big trouble" and he was concerned that she would be fired. Before any such contact occurred, the plaintiff ensured that he and Frechette were alone in her classroom and that the classroom door was closed. Additionally, they both tried to keep quiet to avoid alerting anyone passing by the classroom. According to the plaintiff, no one witnessed any of the sexual conduct between them.

On January 5, 2017, Frechette picked up the plaintiff from the arts center after his afternoon classes ended and drove him to the high school. They had agreed to meet that day under the guise that she was providing him a one-on-one voice lesson. Frechette previously had met with the plaintiff privately on two other occasions for voice lessons. After they arrived at the high

school, they went to her classroom and started kissing. They eventually moved to one of the dressing rooms adjoining the auditorium stage, which was near Frechette's classroom. Shortly thereafter, a security guard entered the dressing room and discovered the plaintiff sitting with his shoes off on a makeshift bed and Frechette, who had also removed her shoes, hiding between two costume racks. The New Haven Police Department and the high school administration immediately were notified, and a criminal investigation ensued. Johnson also reported the incident to the Department of Children and Families (department) that same day. Frechette was placed on administrative leave the following day and resigned from her position in May, 2017. She subsequently pleaded guilty to one count of risk of injury to a child and was sentenced to ten years of imprisonment, execution suspended after nine months, followed by ten years of probation.

On July 12, 2018, the plaintiff commenced this negligence action, seeking damages pursuant to General Statutes § 52-557n[6] and General Statutes § 7-465.[7] In his complaint, the plaintiff alleged, inter alia, that the defendants failed (1) to supervise employees and classrooms in order to prevent the sexual assault of students by employees, (2) to supervise teachers' use of social media and cell phones to ensure that teachers were not sexually harassing or assaulting students, (3) to satisfy affirmative duties imposed under Connecticut's mandatory reporting statutes, and (4) to provide a safe and secure educational environment. The defendants filed an answer on October 4, 2018, denying the material allegations of the complaint and asserting, by way of a special defense, that they were entitled to governmental immunity.

On October 30, 2019, following discovery, the defendants moved for summary judgment on all counts of the complaint on, inter alia, the grounds that the plaintiff's claims were barred by statutory and common-law governmental immunity. In support of their motion, they argued that they had satisfied any ministerial duties owed to the plaintiff under the mandatory reporting statutes and that the other conduct alleged in the complaint involved discretionary governmental acts. In addition, the defendants argued that the claim against the board pursuant to § 7-465 failed as a matter of law because such a claim must be predicated on a finding that an employee had acted negligently and that Johnson, whose alleged negligence underlay the indemnity claim, was entitled to immunity. In response, the plaintiff countered that the defendants were not entitled to summary judgment because there existed genuine issues of material fact with respect to whether the defendants had breached the mandatory reporting statutes and whether the defendants were liable for their discretionary acts because the plaintiff was an identifiable person subject to imminent harm. The plaintiff

additionally argued that Johnson's deposition testimony established two ministerial duties that precluded summary judgment on the basis of governmental immunity. Specifically, he asserted that (1) his free period between 12:30 through 2 p.m. on Fridays violated a school policy prohibiting free class periods, and (2) students attending the arts center in the afternoons were not adequately accounted for in violation of an attendance policy.

In a memorandum of decision filed November 13, 2020, the trial court granted the defendants' motion for summary judgment. Relevant to this appeal, the court concluded that nothing in the record supported the plaintiff's assertion that the defendants had knowledge of, or reasonable cause to suspect prior to January 5, 2017, that Frechette was sexually abusing the plaintiff. The court noted the plaintiff's testimony that, to his knowledge, no one had observed the inappropriate physical contact between him and Frechette and that they took measures to avoid being discovered. The court also concluded that the complaint did not allege a violation of any ministerial duties by the defendants. In addition, on the basis of the pleadings and evidentiary record, the court concluded that, to the extent the plaintiff alleged that the defendants were liable for negligence arising from discretionary acts, those claims were barred by governmental immunity because the plaintiff failed to establish that there existed a genuine issue of material fact with respect to whether he was an identifiable person subject to imminent harm. In light of its determination that Johnson was entitled to governmental immunity, the court concluded that the plaintiff's indemnification claim under § 7-465, which sought to hold the board liable for damages arising from Johnson's alleged negligence, also failed as a matter of law.[8] This appeal followed. Additional facts will be set forth as necessary.

Before turning to the merits of the plaintiff's claims on appeal, we set forth the standards that govern our review of a trial court's decision to grant a motion for summary judgment and provide an overview of the doctrine of governmental immunity. A party is entitled to summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle [the party] to a judgment as a matter of law . . . ." (Internal quotation marks omitted.) *Ramos* v. *Branford*, 63 Conn. App. 671, 677, 778 A.2d 972 (2001). "The party opposing a motion for summary judgment must present evidence that demonstrates the existence

of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *McCarroll* v. *East Haven*, 180 Conn. App. 515, 521, 183 A.3d 662 (2018).

"A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Thivierge* v. *Witham*, 150 Conn. App. 769, 773, 93 A.3d 608 (2014). Accordingly, we must determine whether "the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Kusy* v. *Norwich*, 192 Conn. App. 171, 176, 217 A.3d 31, cert. denied, 333 Conn. 931, 218 A.3d 71 (2019).

As a general rule, municipalities are "immune from liability unless the legislature has enacted a statute abrogating such immunity." *Gaudino* v. *East Hartford*, 87 Conn. App. 353, 355, 865 A.2d 470 (2005). "The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in . . . § 52-557n." (Internal quotation marks omitted.) *Doe* v. *Flanigan*, 201 Conn. App. 411, 426, 243 A.3d 333, cert. denied, 336 Conn. 901, 242 A.3d 711 (2020). Pursuant to § 52-557n (a) (1) (A), a municipality may be liable for damages to a person or property caused by the negligent acts or omissions of the municipality or its employees, officers, and agents acting within the scope of their duties.

Whether a municipality may be held liable for its negligent acts or omissions, however, depends on the nature of the alleged acts. "[Section] 52-557n (a) (2) (B) . . . explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Internal quotation marks omitted.) *Haynes* v. *Middletown*, 314 Conn. 303, 312, 101 A.3d 249 (2014). Thus, a municipality may be held liable for its employee's negligently performed ministerial acts but is, generally speaking, entitled to immunity for the performance of discretionary governmental acts. "A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done. . . . In contrast, when an official has a general duty

to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is deemed discretionary." (Citation omitted; internal quotation marks omitted.) *Borelli* v. *Renaldi*, 336 Conn. 1, 12, 243 A.3d 1064 (2020).

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of [discretionary] governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment." (Internal quotation marks omitted.) *Cole* v. *New Haven*, 337 Conn. 326, 336–37, 253 A.3d 476 (2020). Ministerial acts, on the other hand, "are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Segreto* v. *Bristol*, 71 Conn. App. 844, 851, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) *Merritt* v. *Bethel Police Dept.*, 120 Conn. App. 806, 811, 993 A.2d 1006 (2010).

I

On appeal, the plaintiff first contends that there is a genuine issue of material fact with respect to whether the defendants breached a ministerial duty to report suspected child abuse under § 17a-101 et seq. Second, the plaintiff claims that Johnson's deposition testimony established a genuine issue of material fact regarding whether the defendants violated two additional ministerial duties. We address each of these claims in turn.

## A

The plaintiff first asserts that the trial court improperly rendered summary judgment in favor of the defendants because there exists a genuine issue of material fact with respect to whether Johnson violated a ministerial duty to report suspected child abuse pursuant to § 17a-101 et seq.[9] We are not persuaded.

We begin our discussion by noting that the parties agree that Johnson had a ministerial duty to report suspected child abuse; see General Statutes § 17a-101 (b) (9); when, in the ordinary course of her duties, she obtained "reasonable cause to suspect" that a student has been abused or was at "imminent risk of serious harm . . . ."[10] General Statutes § 17a-101a (a) (1) (C). The plaintiff argues that the trial court improperly required him to produce evidence that Johnson had actual knowledge of abuse, rather than "reasonable cause to suspect" the abuse or that there was a risk of imminent harm. He further contends that summary judgment was improper because there existed a genuine issue of material fact regarding whether, *prior* to January 5, 2017, when Johnson filed a report with the department, Johnson had reasonable cause to suspect that the plaintiff or other students were imminently at risk of sexual abuse by Frechette and therefore violated a ministerial duty by failing to file a report earlier under the mandatory reporting statutes.

In support of his contention that the evidence raises a genuine issue of material fact regarding whether Johnson had reasonable cause to suspect that he was at imminent risk of sexual abuse, the plaintiff directs our attention to the following facts: Frechette's classroom, which was adjacent to the gymnasium and cafeteria, was isolated from other classrooms and afforded Frechette privacy; no one could view the inside of her classroom from the hallway because the side-by-side doors to the room did not have windows; and Frechette had created a relaxed, lounge environment in her classroom, including a couch, piano, keyboard, and lamps that provided soft lighting. In short, the plaintiff argues that Johnson and other staff members had reasonable cause to believe a student was at imminent risk of sexual abuse by Frechette because her classroom, the nature of which was known to Johnson and other staff members, was inappropriate for an educational setting. Additionally, the plaintiff contends that (1) certain staff members were aware that Frechette met privately with students for lessons, and (2) the school administration knew that Frechette had collected students' contact information, that she had access to the school building after hours, and that she was inexperienced in teaching high school students. According to the plaintiff, these additional facts, taken together, were enough to create a reasonable suspicion of imminent abuse.

In response, the defendants argue that the mere fact that Frechette had created a relaxed environment in her classroom, met with students one on one, and sent text messages to students participating in the play about the rehearsal schedule could not, as a matter of law, constitute reasonable cause to suspect that the plaintiff or any other student was at imminent risk of sexual abuse. The defendants emphasize that, prior to January 5, 2017, they never had received any complaints about Frechette's communications or contact with students and that there had been no disciplinary notations in her record. Additionally, they note that it is undisputed that Frechette and the plaintiff always ensured that they were alone before any sexual contact occurred between them and that there was no evidence that any staff member or Johnson knew of the communications between Frechette and the plaintiff.

The defendants also argue that the plaintiff in this case has produced even less evidence in support of his claim that they had reasonable cause to suspect that he was at imminent risk of sexual abuse than the plaintiffs had produced in *Doe* v. *Madison*, 340 Conn. 1, 262 A.3d 752 (2021),[11] a recent case in which our Supreme Court concluded that municipal defendants had no reasonable cause to suspect that students were at imminent risk of sexual abuse. Id., 24–25. In that appeal, the plaintiffs, three male students, had brought separate and consolidated negligence actions against a board of education and a high school principal (*Madison* defendants), seeking damages for injuries arising from sexual abuse by a female teacher. Id., 5. The trial court rendered summary judgment in favor of the defendants on the ground of governmental immunity, and the plaintiffs appealed. Id. On appeal to our Supreme Court, the plaintiffs argued that the trial court improperly had granted summary judgment in favor of the *Madison* defendants because the evidence demonstrated that the school principal and staff had reasonable cause to suspect child abuse and failed to report the abuse to the department. Id. Specifically, the plaintiffs argued that the teacher, who also served as a core conditioning coach for the football team, wore to football practice "skimpy shorts and sports bras that exposed her genitalia and breasts," creating reasonable cause to suspect that the plaintiffs were at imminent risk of sexual abuse, which should have been reported by the team's coaches, some of whom had testified that they had thought the teacher dressed in that manner to attract the attention of male student athletes. (Internal quotation marks omitted.) Id., 21. Additionally, the plaintiffs argued that the teacher's husband, who was also employed at the school, had known that his wife had communicated with one of the plaintiffs on social media and that the husband had claimed to be aware of her flirtatious behavior with students. Id. The plaintiffs also asserted that the *Madison* defendants had reasonable cause to suspect

that they were at imminent risk of sexual abuse because they repeatedly had visited the teacher's classroom, and two of the plaintiffs had been summoned out of other classes by her on multiple occasions. Id.

Our Supreme Court concluded that the trial court properly had granted summary judgment, noting that the mandatory reporting statute was "[c]onsistent with case law governing the concept of 'reasonable suspicion' in the criminal law context . . . ." Id., 24. Similar to the concept of reasonable suspicion, a mandated reporter's suspicion or belief that a child is at imminent risk of abuse "does not require certainty or probable cause." (Emphasis omitted; internal quotation marks omitted.) Id.; see also General Statutes § 17a-101a (d). Rather, "reasonable cause to suspect is an objective standard that focuses not on the actual state of mind of the [decision maker], but on whether a reasonable person, having the information available to and known by the [decision maker], would have had that level of suspicion." (Internal quotation marks omitted.) *Doe* v. *Madison*, supra, 340 Conn. 24. Such belief or suspicion "may be based on factors including, but not limited to, observations, allegations, facts or statements by a child, victim . . . or third party." General Statutes § 17a-101a (d). In assessing whether there existed "reasonable cause to suspect" that a child has been abused or was at imminent risk of serious harm, the court held that a reviewing court must consider "the totality of the circumstances at the time of the decision . . . based on [the] specific and articulable facts and rational inferences taken therefrom." (Internal quotation marks omitted.) *Doe* v. *Madison*, supra, 24. It further observed that "[w]hether reasonable cause or suspicion exists in view of a given set of facts presents a question of law subject to plenary review." Id.

Applying the foregoing principles, our Supreme Court in *Doe* v. *Madison*, supra, 340 Conn. 1, reasoned that, based on the totality of the circumstances, none of the school's employees had reasonable cause to suspect that the plaintiffs were at imminent risk of sexual abuse by the teacher. See id., 24–25. It emphasized that, prior to the incidents giving rise to the plaintiffs' actions, the teacher had been held in high regard by her colleagues, and her record was unblemished. See id., 25. Furthermore, even though her husband occasionally had concerns about her conduct and attire, he thought that she simply intended to elicit attention and did not believe that she was engaging or was going to engage in sexual conduct with the plaintiffs. Id., 14 and n.14. The court noted that there was no evidence that any of the employees had ever witnessed the teacher flirting with a student, that the plaintiffs' visits to her classroom did not appear out of the ordinary to other faculty members, and that she took measures to avoid the appearance of impropriety when summoning two of the plaintiffs from their other classes. See id., 25–26. With respect to her

attire during football practices, the court observed that, albeit pushing the bounds of decorum in an educational setting, one's appearance does not establish an inclination to engage in sexual misconduct and that there was no evidence of nudity in front of students. See id., 26.

Finally, the court disagreed that it should have been apparent to school employees that the plaintiffs were being sexually abused when viewing the evidence in the aggregate, stating that such a "piling of inferences distorts the actual reality apparent to the various employees in real time." Id., 27. The court concluded that attributing knowledge of all of the facts to each employee for purposes of determining whether there existed "reasonable cause to suspect sexual abuse or imminent risk thereof [was] akin to charging the various high school employees with the responsibility of viewing a completed jigsaw puzzle, when all any of them could see at any relevant time was a piece or two." Id., 28.

Turning to the facts of the present case, viewed in the light most favorable to the plaintiff, we conclude that the plaintiff has failed to demonstrate that there is a genuine issue of material fact with respect to whether Johnson or any other staff member had reasonable cause to suspect that Frechette was sexually abusing the plaintiff or exposing him to an imminent risk of sexual abuse. Frechette's personnel file was devoid of complaints or disciplinary actions prior to the events underlying this appeal, and her application for the high school teaching position was accompanied by positive recommendations from her references. See id., 25 (no reasonable cause to suspect abuse where, inter alia, teacher's "personnel record was unblemished, and she was held in uniformly high regard by her colleagues and students"). And, although the school administration knew that Frechette had collected contact information from all of the students involved in the play, that act alone simply would not cause a reasonable person to suspect that any of those students were at imminent risk for sexual abuse. Nor would that fact, when considered in conjunction with other generally known circumstances, such as the nontraditional setting of Frechette's classroom, give rise to reasonable suspicion that Frechette's students were at risk of serious harm. There similarly is nothing inherently suspicious about a teacher occasionally meeting with a student privately in connection with a supervised extracurricular activity. See id., 26 (teacher had "seemingly legitimate" reason for summoning students to her classroom in her capacity as faculty yearbook advisor). Johnson testified to that effect, stating that it was "[n]ot uncommon at all" for a student involved in an extracurricular activity to be seen with a staff member supervising that activity. See *Doe* v. *Madison*, supra, 340 Conn. 25–26 (observing that staff member and faculty testimony established that students' repeated visits to teacher's classroom did

not appear unusual because it was not uncommon for teachers to summon students to different classrooms for academic and extracurricular activities).

Moreover, even if we were to assume that the school administration knew that Frechette was sending text messages to students about school related matters, none of the evidence presented suggests that Johnson or any other staff member was aware that Frechette had exchanged sexually suggestive messages with the plaintiff. Although Frechette used her personal cell phone to converse with the plaintiff, neither the plaintiff nor Frechette disclosed to anyone that they were communicating by text message prior to the commencement of the investigation into Frechette's conduct.

Finally, before any sexual contact occurred between the plaintiff and Frechette, the plaintiff testified that he had ensured that they were alone and that both he and Frechette took measures to be discreet so as to not be discovered. According to the plaintiff, no staff member had witnessed them engaging in any sexual conduct. The plaintiff produced no evidence to the contrary.

In sum, considering the totality of the circumstances, the plaintiff has failed to establish the existence of a genuine issue of material fact regarding whether the defendants had knowledge or reasonable cause to believe that Frechette had abused or was imminently likely to sexually abuse a student prior to the date on which a report was made. Consequently, we conclude that the trial court correctly determined that the plaintiff failed to raise a genuine issue of material fact regarding whether the defendants violated a ministerial duty under Connecticut's mandated reporter statutes.

B

The plaintiff next claims that the trial court failed to recognize two additional ministerial duties that he claims were established by Johnson's deposition testimony and, therefore, improperly rendered summary judgment in favor of the defendants on the ground that the acts complained of were discretionary. The defendants counter that Johnson's testimony did not raise a genuine issue of material fact regarding the existence of a "nondiscretionary, unwritten municipal rule or policy" and that the trial court correctly determined that, in the absence of a clear directive, the alleged negligent acts were discretionary in nature. We agree with the defendants, albeit partly on different grounds.

"[O]ur courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, *by its clear language*, compels a municipal employee to act in a prescribed manner, without the exercise of judg-

ment or discretion." (Emphasis added; internal quotation marks omitted.) *Kusy* v. *Norwich*, supra, 192 Conn. App. 177. A ministerial duty, however, "need not be written and may be created by oral directives from superior officials, the existence of which are established by testimony." *Doe* v. *Madison*, supra, 340 Conn. 32; see also *Wisniewski* v. *Darien*, 135 Conn. App. 364, 374, 42 A.3d 436 (2012) (municipal official's testimony may provide evidentiary basis for existence of ministerial duty). In relying on an official's testimony to establish the existence of a ministerial duty, "[s]pecificity is required in all aspects of the directive," and, therefore, descriptions of general practices or expectations that merely guide an employee's exercise of discretion are insufficient to establish a ministerial duty. *Doe* v. *Madison*, supra, 32; see also *Strycharz* v. *Cady*, 323 Conn. 548, 566–67, 148 A.3d 1011 (2016) (school superintendent's testimony that school principal "had a duty to assign school staff members to different posts, including the bus port, and that he lacked the discretion not to do so" provided sufficient basis from which "to conclude that school administrators had the ministerial duty to assign staff members to monitor students throughout the school" but lacked specificity with respect to certain aspects of directive and, consequently, there was no basis to conclude that those same administrators had duty to ensure staff performed their assignments). Whether a discretionary or ministerial duty exists presents a question of law and, therefore, is subject to plenary review. See, e.g., *Ventura* v. *East Haven*, 330 Conn. 613, 634, 199 A.3d 1 (2019); see also *Thivierge* v. *Witham*, supra, 150 Conn. App. 773–74 ("[t]he issue of governmental immunity is simply a question of the existence of a duty of care, and this court has approved the practice of deciding the issue of governmental immunity as a matter of law" (internal quotation marks omitted)).

In support of his claim that the record establishes two additional ministerial duties, the plaintiff first points to Johnson's deposition testimony in which she stated that, "technically, actually, nobody should have had a free period" during the relevant school year. During her deposition, Johnson explained that some students who were teachers' assistants incorrectly believed that the class period in which they assisted a teacher was a free period but that, technically, it was not, and that all other students who did not have a full load of classes were dismissed after their last class ended. The plaintiff claims that the defendants violated this alleged duty because he did not have classes at the high school or arts center on Fridays between 12:30 and 2 p.m., resulting in a free period in his schedule. He argues that the defendants' negligence in adhering to the prohibition against free class periods allowed him to be "lure[d]" into Frechette's classroom and sexually abused.

Second, in response to a question in her deposition about whether "attendance [is] taken in every class," Johnson answered in the affirmative and subsequently stated that teachers are "required to notify the parent . . . [a]t some point in the day" if a student is absent from class. The plaintiff contends that this testimony established a ministerial duty for teachers to take attendance and that the defendants violated this purported duty when they failed to monitor students who were dismissed early, such as the arts center students, to ensure they actually exited the high school when their high school classes ended and, instead, only verified that students leaving the building prior to the end of the school day were permitted to do so.

On the basis of our review of Johnson's deposition testimony, we conclude that the trial court properly determined that the plaintiff failed to establish a genuine issue of material fact about whether the defendants violated a ministerial duty prohibiting free periods. Johnson merely observed that no student "*should* have had" a free period in his or her schedule and that students whose class schedule ended before the school day concluded were dismissed early. (Emphasis added.) Johnson did not state unequivocally that she had communicated to her employees a mandatory and prescribed method for creating class schedules without free periods or allude to the existence of any such policy. See *Doe* v. *Madison*, supra, 340 Conn. 30 (athletic director's statement that he expected subordinates "to enforce certain standards of professionalism, including requiring any coach, male or female, to cover up if shirtless," was insufficient to establish ministerial duty because there was no evidence that director's views on professional attire were ever communicated to staff in manner that clearly established duty to dress in prescribed way (internal quotation marks omitted)); cf. *Ventura* v. *East Haven*, supra, 330 Conn. 640 n.14 (noting that testimony relied on to establish ministerial duties in *Strycharz* unequivocally established such duties). Johnson's testimony simply highlighted a general practice with respect to class schedules and lacked the specificity necessary to establish the existence of a ministerial duty.[12]

The same is true with respect to Johnson's testimony about the school's attendance policy. Her statements, in context, are not the type of specific and clearly stated oral directives that our cases have recognized as sufficient to establish a ministerial duty. See *Strycharz* v. *Cady*, supra, 323 Conn. 566–67; *Wisniewski* v. *Darien*, supra, 135 Conn. App. 374–78. And, even if we were to agree with the plaintiff that Johnson's affirmative answer to the question of whether "attendance [is] taken in every class" and her subsequent statement that teachers are "required to notify the parent . . . [a]t some point in the day" when a student is absent are

sufficient to create a genuine issue of material fact about whether the defendants had a ministerial duty to take attendance in every *class*, the defendants would nevertheless be entitled to summary judgment because the plaintiff proffered no evidence establishing that the defendants had breached this duty. Nothing within the evidentiary record in this case establishes that any of the plaintiff's teachers failed to take attendance in class on the days and times in question or subsequently failed to notify his parents of his absence from class. On the contrary, the plaintiff fails to even allege as much in support of this claim.

The crux of the plaintiff's argument with respect to an alleged ministerial duty to take attendance is that the defendants failed to account for students who were dismissed early but chose not to leave the high school building. He argues that the defendants' lack of oversight concerning whether arts center students exited the building when dismissed after their last high school class ended allowed him to visit Frechette's classroom unnoticed, leading to an instance of sexual abuse. Johnson did not testify, however, that teachers were required to take attendance in every class and also account for students who had been excused, yet remained in the building. In fact, Johnson repeatedly testified to the contrary. She explicitly stated that security staff did not routinely attempt to locate students who had been dismissed but had failed to leave the premises.[13] Her testimony plainly established that there was no general practice or requirement for staff members to account for students permitted to leave the building, much less a clear directive compelling them to account for the whereabouts of those students in a prescribed manner.

As a result, we conclude that Johnson's deposition testimony did not create a genuine issue of material fact about whether the defendants violated a ministerial duty to prohibit free periods or take class attendance.

II

The plaintiff next claims that, even if the defendants' acts or omissions were discretionary in nature, the court improperly concluded that the defendants were entitled to governmental immunity because there exists a genuine issue of material fact about whether he was an identifiable person subject to imminent harm. In support of this claim, he essentially relies on the same evidence and arguments set out in part I A of this opinion.

As we previously have noted, municipalities and their employees generally are shielded from liability arising from their negligent acts or omissions that require the exercise of judgment or discretion in the performance of official functions. See, e.g., *Cole* v. *New Haven*, supra, 337 Conn. 336–38. Nonetheless, our courts recognize three exceptions to discretionary act immunity under

which liability may attach; see, e.g., *Doe* v. *Board of Education*, 76 Conn. App. 296, 300, 819 A.2d 289 (2003); each representing "a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) *Northrup* v. *Witkowski*, 175 Conn. App. 223, 234, 167 A.3d 443 (2017), aff'd, 332 Conn. 158, 210 A.3d 29 (2019).

The plaintiff claims that he falls within the identifiable person-imminent harm exception to governmental immunity.[14] The identifiable person-imminent harm "exception applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 350, 984 A.2d 684 (2009). To fall within this exception to discretionary act immunity, a plaintiff must establish "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply." (Internal quotation marks omitted.) *Doe* v. *Madison*, supra, 340 Conn. 36. "[T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [in which case] resolution of those factual issues is properly left to the jury." (Internal quotation marks omitted.) *Washburne* v. *Madison*, 175 Conn. App. 613, 629, 167 A.3d 1029 (2017), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019). Our analysis of the plaintiff's claim in the present appeal focuses on the imminence and apparentness prongs of the identifiable person-imminent harm exception.[15]

For purposes of determining whether a plaintiff was subject to imminent harm, "[i]mminent does not simply mean a foreseeable event at some unspecified point in the not too distant future." *Bonington* v. *Westport*, 297 Conn. 297, 314, 999 A.2d 700 (2010); see also *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 275, 41 A.3d 1147 (2012). Rather, "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that *the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm*." (Emphasis in original; internal quotation marks omitted.) *Doe* v. *Madison*, supra, 340 Conn. 37.

In *Doe* v. *Madison*, supra, 340 Conn. 1, our Supreme Court held that the plaintiffs in that case failed to satisfy the imminent harm to identifiable person exception to governmental immunity. See id., 36–39. Although it

acknowledged that sexual assault victims suffer unmistakable serious harm, the court concluded that the record on summary judgment in that case failed to create a genuine issue of material fact about whether any observer reasonably would have anticipated a sexual assault given the teacher's "generally clandestine pattern of behavior" to avoid raising suspicion. Id., 38. It further noted that, like the factual record in the present appeal, the teacher's professional record was unblemished prior to the discovery of the assaults and that there was undisputed evidence that students routinely visited teachers' classrooms for legitimate extracurricular reasons, and, therefore, it would not have been apparent to any staff members that the plaintiffs may be subjected to an imminent harm. Id., 38–39.

For many of the same reasons our Supreme Court articulated in rejecting the plaintiffs' claim in *Doe* v. *Madison*, supra, 340 Conn. 1, we conclude that the summary judgment record in this case fails to create a genuine issue of material fact about whether it was reasonably apparent to Johnson or to any other staff member that Frechette was so likely to harm the plaintiff that any of the defendants had an unequivocal duty to act to prevent the harm.[16] The record makes clear that the plaintiff and Frechette took steps to avoid raising suspicion about the nature of their relationship. The plaintiff himself testified that he ensured that he and Frechette were alone before engaging in sexual conduct. Although the plaintiff was not enrolled in Frechette's classes, there is no evidence to suggest that his repeated visits to Frechette's classroom should have made it apparent to any staff member that a sexual assault was imminent, particularly in light of the fact that he had an ostensibly legitimate reason for visiting her classroom due to his involvement in the school play. It also bears emphasizing that the defendants received no complaints concerning Frechette prior to the discovery of the abuse and that Frechette's recommendations for the theater teaching position were all positive. Additionally, nothing in the record suggests that any staff member reasonably would have anticipated that a sexual assault of the plaintiff or any student would be the immediate result of Frechette's relaxed classroom setting, particularly in light of the fact that it was a space intended for dramatic arts instruction. See id., 38 (noting that teacher's attire at practices was too attenuated from sexual assault for staff member to reasonably have anticipated that harm was imminent). In sum, there is nothing within the record that gives rise to a genuine issue of material fact with respect to the applicability of the identifiable person-imminent harm exception to discretionary act immunity.

We also reject the plaintiff's assertion that the imminence of the harm would have been apparent to Johnson and other staff members if they had chosen to make further inquiries instead of deliberately overlooking cir-

cumstances that culminated in his being sexually abused. There is no basis in the record to conclude that Johnson or any staff member wilfully ignored circumstances that otherwise would have alerted them to the possibility of imminent and immediate harm. Moreover, the plaintiff's contention is at odds with our Supreme Court's precedent, which has held that, in considering whether a harm is apparent for the purposes of the identifiable person-imminent exception, "there is no inquiry into the ideal course of action for the government officer under the circumstances. Rather, the apparentness requirement contemplates an examination of the circumstances of which the government officer could be aware, thereby ensuring that liability is not imposed solely on the basis of hindsight . . . ." *Edgerton* v. *Clinton*, 311 Conn. 217, 228 n.10, 86 A.3d 437 (2014). A government actor is under no duty to ask questions beyond that which is immediately apparent. See *Doe* v. *Madison*, supra, 340 Conn. 39 (neither staff members nor hallway monitors had duty to ask questions beyond what was immediately apparent with respect to teacher summoning students from other classes for seemingly legitimate reasons); *Fleming* v. *Bridgeport*, 284 Conn. 502, 535, 935 A.2d 126 (2007) (although police officers might have made further inquiry by asking more pertinent questions, nothing in record demonstrated that it was apparent to officers that plaintiff would have been subjected to imminent harm).

The plaintiff has failed to identify any facts in the record creating a genuine issue of material fact about whether it was reasonably apparent to the defendants that their failure to act would subject him to imminent harm. Accordingly, we conclude that the trial court properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This action was commenced on behalf of John Doe, a minor, by and through his parent, Jane Doe, as next friend.

[2] The city of New Haven (city) was also a defendant in the underlying action. The court rendered summary judgment in favor of the city on all counts of the plaintiff's complaint. The plaintiff does not challenge that judgment on appeal, and the city has not participated in this appeal. For clarity, we refer to the board and to Johnson individually by name and collectively as the defendants.

The plaintiff also brought a separate action against Frechette, seeking damages for assault, intentional infliction of emotional distress and negligent infliction of emotional distress. See *Doe* v. *Frechette*, Superior Court, judicial district of New Haven, CV-17-5039317-S. The trial court in that action granted the plaintiff's motion to consolidate that matter with the underlying action. The plaintiff's action against Frechette is not at issue in this appeal.

[3] In his brief to this court, the plaintiff additionally argues that the trial court improperly rendered summary judgment with respect to his allegation that the defendants violated a ministerial duty owed to him under General Statutes § 10-220 (a) (4), which provides, inter alia, that each local board of education has a duty to provide an appropriate learning environment, including a safe school setting. Other than a cursory reference to that statute, however, the plaintiff's brief is wholly devoid of any legal authority or analysis to support the bald assertion that § 10-220 (a) (4) imposes a ministe-

rial rather than a discretionary duty. When a party cites no law and provides no analysis in support of a claim, we may decline to review it. See, e.g., *Jahn* v. *Board of Education*, 152 Conn. App. 652, 665–66 n.8, 99 A.3d 1230 (2014); see also *Marvin* v. *Board of Education*, 191 Conn. App. 169, 178 n.8, 213 A.3d 1155 (2019) ("[c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion" (internal quotation marks omitted)). We therefore do not address this claim.

[4] By signing the commitment form, a student agreed to accept any role assigned, participate in rehearsals, and abide by certain standards of conduct.

[5] Johnson testified that some teachers used text messaging to communicate with students but that most teachers used other communication platforms designed to transmit messages to groups. Although it was known that Frechette had collected students' contact information, there is no evidence that Johnson or any other staff member knew that Frechette was text messaging the plaintiff on an individual basis.

[6] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[7] General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment . . . ."

[8] Pursuant to § 7-465 (a), a plaintiff may seek "indemnification against a municipality in conjunction with a common-law action against a municipal employee . . . ." (Citation omitted.) *Manson* v. *Conklin*, 197 Conn. App. 51, 53 n.1, 231 A.3d 254 (2020). The duty to indemnify, however, attaches only when a municipal official, agent or employee incurs liability. *Kusy* v. *Norwich*, 192 Conn. App. 171, 174 n.2, 217 A.3d 31, cert. denied, 333 Conn. 931, 218 A.3d 71 (2019); see also *Daley* v. *Kashmanian*, 193 Conn. App. 171, 175 n.2, 219 A.3d 499 (2019) (duty to indemnify arises upon finding that employee acted negligently within scope of employment), cert. granted, 335 Conn. 939, 237 A.3d 1 (2020), and cert. denied, 335 Conn. 940, 237 A.3d 1 (2020).

[9] General Statutes § 17a-101 (b) (9) provides in relevant part that "any school employee, as defined in [General Statutes §] 53a-65" shall be a mandated reporter.

General Statutes § 17a-101a (a) (1) provides in relevant part that "[a]ny mandated reporter, as described in section 17a-101, who in the ordinary course of such person's employment or profession has reasonable cause to suspect or believe that any child under the age of eighteen years (A) has been abused or neglected . . . or (C) is placed at imminent risk of serious harm . . . shall report or cause a report to be made in accordance with the provisions of [General Statutes §§] 17a-101b to 17a-101d, inclusive."

[10] In *Doe* v. *Madison*, 340 Conn. 1, 23 n.22, 262 A.3d 752 (2021), our Supreme Court observed that numerous Superior Court decisions have held that § 17a-101a (a) (1) imposes a ministerial, rather than a discretionary, duty. See, e.g., *Doe* v. *Kennedy*, Superior Court, judicial district of Waterbury, Docket No. CV-09-0513921-S (November 29, 2012) (55 Conn. L. Rptr. 193, 196). The defendants in the present case contend that, although the mandatory reporting statutes impose a ministerial duty, it is triggered only when a mandated reporter has actual knowledge of or "reasonable cause to suspect" abuse and that determining whether reasonable cause exists is a discretionary act because such a determination requires the exercise of judgment and discretion. Thus, the defendants appear to assert that, in the absence of actual knowledge, acts or omissions by municipal officials or employees in

relation to their duty to report suspected child abuse are discretionary. Because we conclude that the plaintiff cannot prevail with respect to his claim that the defendants breached duties owed under § 17a-101 et seq., it is unnecessary to address the defendants' argument. Accordingly, for purposes of this appeal, we assume, without deciding, that the relevant mandatory reporting statutes impose a ministerial duty.

[11] In their appellate brief, the defendants cited to *Doe* v. *Madison*, Superior Court, judicial district of New Haven, CV-17-5037671-S (March 29, 2019), which was pending before our Supreme Court. Prior to oral argument, the defendants filed a notice of supplemental authority pursuant to Practice Book § 67-10, citing *Doe* v. *Madison*, supra, 340 Conn. 1, which was officially released after the parties had filed their briefs in the present appeal.

[12] Furthermore, we are somewhat perplexed by the plaintiff's argument that the defendants violated the alleged ministerial duty of prohibiting free periods in class schedules. Johnson plainly stated that students who did not have a full class load did not have a free class period but, rather, were dismissed when they were done with their scheduled classes. The plaintiff undeniably fell within that category of students.

[13] Johnson testified, for example, that staff members would not attempt to locate a student who had permission to leave but failed to do so unless there was an issue, such as security staff being alerted that a parent had arrived to pick up a student and the student failed to show up at the designated time.

[14] The other exceptions to discretionary act immunity recognized in Connecticut are when (1) "the alleged conduct involves malice, wantonness or intent to injure" or (2) "a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws." (Internal quotation marks omitted.) *Northrup* v. *Witkowski*, supra, 175 Conn. App. 234.

[15] The defendants argued in their motion for summary judgment that the plaintiff was not an identifiable person with respect to any of the allegations arising from Frechette's conduct that occurred outside of regular school hours. See, e.g., *St. Pierre* v. *Plainfield*, 326 Conn. 420, 437–38, 165 A.3d 148 (2017); *Maselli* v. *Regional School District No. 10*, 198 Conn. App. 643, 656–57, 235 A.3d 599, cert. denied, 335 Conn. 947, 238 A.3d 19 (2020). The defendants, however, have not raised that argument on appeal.

[16] In support of his claim that he satisfies the identifiable person-imminent harm exception, the plaintiff also cites to the fact that Frechette often would greet students involved in the play, including the plaintiff, by hugging them before rehearsals. Johnson, however, testified that she did not recall witnessing Frechette hug any students and that, in any event, she previously had seen teachers hug students and that it is not conduct that, by itself, would raise a concern. We make no pronouncement as to the propriety of this type of physical contact between an educator and student but simply note that, on the facts of the record in the present appeal, there is nothing to suggest that Frechette's conduct or interactions with students made it apparent to any staff member that a failure to take immediate action would subject the plaintiff to imminent harm. See *Washburne* v. *Madison*, supra, 175 Conn. App. 630 ("we consider a 'clear and unequivocal duty' . . . to be one that arises when the probability that harm will occur from the dangerous condition is high enough to necessitate that the defendant[s] act to alleviate the defect" (internal quotation marks omitted)).